IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CAMCO MANUFACTURING, INC.,        )
                                  )
            Plaintiff,            )
                                  )
       v.                         )      1:18-cv-0645
                                  )
JONES STEPHENS CORP., AND TREK    )
POWER INC.,                       )
                                  )
            Defendants.           )


**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

Plaintiff Camco Manufacturing, Inc. ("Camco") claims that Defendants Jones Stephens Corp. ("JSC") and Trek Power Inc. ("Trek Power") copied its yellow and black trade dress for electrical adapters and extension cords. (Doc. 16 ¶ 1.) Camco alleges trade dress infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), common law trade dress infringement, passing off, common law unfair competition, and unfair competition under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1. (Doc. 16.) Before the court are motions to dismiss by Trek Power and JSC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docs. 19 & 27.) The motions have been fully briefed and are ready for decision. For the reasons set forth below, the motions will be granted in part and denied in part.

# I.   BACKGROUND

The fundamental allegations of the amended complaint, taken in the light most favorable to Camco, show the following:

Camco manufactures equipment for recreational vehicles ("RVs"), including electrical adapters (sometimes called "dogbones") and electrical extension cords used to connect to power sources.  (Doc. 16 ¶ 8.)  Its cords are black with yellow ends, heads, or receptacles, which it asserts is an ornamental trade dress.  (Id. ¶ 10.)  Camco sells its products through stores, catalogs, and the internet, and has sold its products with its trade dress since approximately March 2005.  (Id. ¶¶ 9, 12.) Defendants sell similar products that Camco alleges will likely cause confusion among consumers, because the products are of the same type, sold through the same channels of trade, and have "identical or nearly identical colors and color combinations of a black cord with yellow ends, heads, or receptacle."  (Id. ¶¶ 24, 26.)

## II.  ANALYSIS

### A.   Standard of Review

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state

a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).  "Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations 'to raise a right to relief above the speculative level' so as to 'nudge[] the[] claims across the line from conceivable to plausible.'" Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ., 179 F. Supp. 3d 544, 550 (M.D.N.C. 2016) (quoting Twombly, 550 U.S. at 555).  Mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

**B.    Trade Dress Infringement Under the Federal Lanham Act**

The first claim for relief alleges trade dress infringement under the Lanham Act.  (Doc. 16 at 14.)  "The trade dress of a product consists of its 'total image and overall appearance,' including its 'size, shape, color or color combinations, texture,

3

graphics, or even particular sales techniques.'" <u>Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.</u>, 187 F.3d 363, 368 (4th Cir. 1999) (quoting <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 764 n.1 (1992)). A federal claim for trade dress infringement arises under Section 43(a) of the Lanham Act when "(1) the trade dress is primarily non-functional; (2) the trade dress is inherently distinctive or has acquired a secondary meaning; and (3) the alleged infringement creates a likelihood of confusion." <u>Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.</u>, 87 F.3d 654, 657 (4th Cir. 1996). Defendants argue that Camco's amended complaint fails to allege that its purported trade dress is inherently distinctive or has acquired secondary meaning and that it is non-functional. (<u>See</u> Doc. 20 at 5; Doc. 28 at 6.) Each element will be addressed in turn.

### 1.   Inherently Distinctive

Defendants first argue that Camco's amended complaint fails to allege inherent distinctiveness, because the allegations are conclusory and are limited to color and possibly design, which, as a matter of law, are insufficient to state a claim. (Doc. 20 at 5-6; Doc. 28 at 9-10.)

The Supreme Court has clearly held that color cannot be inherently distinctive and can only be protected upon a showing of secondary meaning. <u>Wal-Mart Stores, Inc. v. Samara Bros., Inc.</u>, 529 U.S. 205, 211-12 (2000) (citing <u>Qualitex Co. v. Jacobson Prods.</u>

Co., Inc., 514 U.S. 159, 162–63 (1995)).  The Supreme Court has
also clearly held that "design, like color, is not inherently
distinctive," and "therefore protectible[] only upon a showing of
secondary meaning."  Id. at 212, 216.    Therefore, Camco's
allegations that its trade dress is inherently distinctive (Doc.
16 ¶¶ 18, 47) fail as a matter of law.  Camco acknowledges as much
by not responding directly to this argument, but rather making its
arguments about secondary meaning.  (Doc. 21 at 9; Doc. 33 at 12;
see Doc. 32 at 3; Doc. 34 at 7.)

###    2.    Secondary Meaning

To plausibly allege a claim for trade dress infringement based
on Camco's yellow and black color and/or design, the amended
complaint    must    allege    that    Camco's    trade    dress    attained
distinctiveness    through    a    showing    of    secondary    meaning.
"Secondary meaning occurs when, in the minds of the public, the
primary significance of a mark is to identify the source of the
product rather than the product itself."  Rothy's, Inc. v. JKM
Techs., LLC, 360 F. Supp. 3d 373, 387 (W.D. Va. 2018) (internal
quotation marks and brackets omitted) (quoting Wal-Mart, 529 U.S.
at    211).    "[P]roof    of    secondary    meaning    entails    vigorous
evidentiary requirements," and thus "secondary meaning is factual
in nature and typically ill-suited for a motion to dismiss."  Id.
at 387 (brackets omitted) (first quoting Perini Corp. v. Perini
Constr., Inc., 915 F.2d 121, 125 (4th Cir. 1990); then quoting

Stat Ltd. v. Beard Head, Inc., 60 F. Supp. 3d 634, 639 (E.D. Va. 2014)).

Courts in the Fourth Circuit consider four factors to determine if purported trade dress has acquired secondary meaning: "(1) long use; (2) advertising; (3) sales volume; and (4) identity of service or origin in the minds of the purchasing public." Tools USA, 87 F.3d at 660 (quoting Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1528 n.3 (4th Cir. 1984)).[1] "All of these elements need not be proved in order for the plaintiff to establish secondary meaning and no single factor is determinative. These factors are merely tools to aid a court in assessing whether the relevant group of consumers made the requisite mental association between product and producer." Devan Designs, Inc. v. Palliser Furniture Corp., No. 2:91CV00512, 1992 WL 511694, at *7 (M.D.N.C. 1992) ("Devan I") (internal citations omitted), aff'd, 998 F.2d 1008 (4th Cir. 1993).

Trek Power argues that Camco's allegations concerning advertising and sales volume "are vague and, even if true, fail to

---

[1] At least one district court in the Fourth Circuit has applied a six-factor test to determine secondary meaning. See Rothy's, 360 F. Supp. 3d at 387 (listing (1) advertising expenditures; (2)consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use as the factors relevant to the secondary meaning inquiry (citing Perini, 915 F.2d at 125 (4th Cir. 1990) (applying six-factor test to secondary meaning inquiry in trademark infringement case))). All parties cite to the four-factor test (Doc. 20 at 6; Doc. 21 at 9; Doc. 28 at 10), which was applied in Tools USA, 87 F.3d at 660. In any event, consideration of the six factors would not affect the outcome of this motion.

adequately allege secondary meaning" because they fail to allege that consumers will associate the trade dress specifically with Camco and its products. (Doc. 20 at 7.) JSC argues that Camco's allegations of "sales and advertising success" and presence on Amazon.com are "superficial assertions of business or marketing success" that "fail to allege or suggest how consumers associate Plaintiff's purported trade dress with its products." (Doc. 28 at 11.) Camco argues that its amended complaint alleges "the mixed fact and conclusion of 'acquired distinctiveness,'" as well as additional facts supporting secondary meaning. (Doc. 21 at 10–11.) It points to its long duration of usage; its exclusive sales of products bearing the trade dress "except for a plagiarist and the Defendants"; its use of its trade dress to identify its products and to distinguish them from the products of other manufacturers and distributers, and the consuming public's association of its trade dress with its products; its sales volume and advertising success; evidence of prior plagiarizing of its trade dress; and Defendants' intentional and direct copying of its trade dress, "which is *prima facie* evidence of secondary meaning." (Id.)

"The Fourth Circuit applies a presumption of secondary meaning in trade dress infringement cases where [the] defendant intentionally copied the plaintiff's trade dress." Campbell Sales Grp., Inc. v. Gramercy Park Design, LLC, No. 1:10CV55, 2010 WL

3945350, at *4 (M.D.N.C. Oct. 6, 2010); <u>Osem Food Indus. Ltd. v.</u>
<u>Sherwood Foods, Inc.</u>, 917 F.2d 161, 163 (4th Cir. 1990).[2] "The
rationale for this rule is that 'when a defendant copies the
trademark of a competitor, it is likely that he intended to
appropriate some commercial advantage or benefit that his
competitor derived from the use of the mark.'" <u>Lance Mfg., LLC v.</u>
<u>Voortman Cookies Ltd.</u>, 617 F. Supp. 2d 424, 433 (W.D.N.C. 2009)
(quoting <u>M. Kramer Mfg. Co., Inc. v. Andrews</u>, 783 F.2d 421, 499
(4th Cir. 1986)).

The court finds that Camco has pleaded sufficient factual
allegations that, accepted as true at this stage of the
proceedings, plausibly support a finding of direct copying. <u>See</u>
<u>Garnier-Theibaut, Inc. v. Castello 1935 Inc.</u>, No. PWG-17-3632,
2018 WL 2268154, at *5 (D. Md. May 17, 2018) (finding at motion to
dismiss stage that the allegation that defendants directly copied
and held out as their own an exact copy of the plaintiff's
protected work was sufficient to state a claim for trade dress
infringement); <u>Someecards v. SnarkeCards, LLC</u>, No. 3:14-cv-00097,
2014 WL 3866024, at *2 (W.D.N.C. Aug. 6, 2014) (finding at motion
to dismiss stage that the plaintiff's allegations that defendants
intentionally copied plaintiff's products were sufficient to

---

[2] The Fourth Circuit is in the minority of circuits to apply such a
presumption and "may in fact be the only circuit" that currently does
so. <u>Campbell</u>, 2010 WL 3945350, at *5 & n.4.

create a *prima facie* case of secondary meaning).

First, the amended complaint contains pictures showing that Defendants' products are nearly identical to those of Camco. (Doc. 16 ¶¶ 23, 25, 29.) This suggests intentional copying. See <u>Lance Mfg.</u>, 617 F. Supp. 2d at 433. Second, Camco alleges that "one or more Defendants have previously used red and black trade dress" for their products and that "Defendants have switched to products using Camco's Trade Dress in an effort to try to induce the consuming pubic into purchasing Defendants' Knock-off Products rather than Camco's products." (Doc. 16 ¶¶ 27, 28.) Altering a product's trade dress to appropriate the commercial advantage derived from a competitor's distinctive products can also suggest intentional copying. See <u>Lance</u>, 617 F. Supp. 3d at 433-34.

Even if Camco had not sufficiently alleged direct and intentional copying, it has alleged facts sufficient to show secondary meaning. At the pleading stage, extensive factual allegations of secondary meaning are not required because the claim requires an "inherently factual review rarely resolved at the motion to dismiss stage." <u>Stat Ltd.</u>, 60 F. Supp. 3d at 637-38 ("Albeit discernibly skeletal in factual content critical to the trade dress claims," plaintiff's complaint satisfied Rule 12(c)'s permissive standard where the plaintiff included a side-by-side comparison of the respective products' packaging, alleged their packaging was innovative, unique, non-functional, and inherently

distinctive, maintained that the defendants' use of packaging was identical or substantially similar to plaintiff's packaging, and the use by defendants caused substantial consumer confusion and dilution of plaintiff's intellectual property); see Garnier-Theibaut, 2018 WL 2268154, at *5 (finding allegation that defendants "directly copied and held out as their own[] an exact copy of [plaintiff's] protected work" sufficient to show secondary meaning at motion to dismiss stage); Rothy's, 360 F. Supp. 3d at 380, 387–88 (noting that "courts in this Circuit have granted plaintiffs wide latitude in pleading the content of the trade dress at issue" and finding sufficient at motion to dismiss stage allegations of secondary meaning that the product "quickly gained success in the market, selling more than $40 million dollars of product" and that the product received "significant media attention from a variety of national and global media sources").

Camco's amended complaint includes side-by-side pictures of the respective parties' products, alleges that Defendants' products are "likely to cause confusion among the consuming public as to the source" of Defendants' products based on the similarities between the parties' trade dress comprised of a "black cord with yellow heads or receptacles," and charges that Defendants sell their products through the same channels of trade as Camco. (Doc. 16 ¶¶ 23, 25, 29, 50.) Camco has pleaded on information and belief that it has been the exclusive seller of products bearing the trade

dress for over thirteen years, except for Defendants and a plagiarist.[3]  (Id. ¶¶ 13, 14, 19.)  Camco alleges that its trade dress has acquired distinctiveness among the relevant public "as seen by the volume of Camco's sales and advertising success" as well as the company's "paid advertising."  (Id. ¶¶ 19, 46.)

For sales volume, Camco alleges that its sales "have been significant" and that its products "are the number one selling extension cords and dogbone electrical adapters for RVs."  (Id. ¶ 15.)  It additionally alleges that "Amazon.com indicates that

[3] Trek Power argues that because Camco's allegations "concerning consumer expectations and purported confusion" are prefaced with modifiers such as "likely" or "upon information and belief," the allegations are "weak" and do not support a secondary meaning.  (Doc. 20 at 8.)

> Pleading "upon information and belief" was not abolished by Twombly or Iqbal. . . . Just as the phrase "upon information and belief" does not transform a conclusory assertion into a proper allegation, the phrase does not transform a factual allegation into a conclusory assertion.  A complaint's failure to provide evidentiary support for its allegations does not make them conclusory. An allegation is impermissibly conclusory when it is necessary to establish a viable claim but fails to identify a tangible, real-world act or event.

In re Lilley, No. 10-81078C-13D, 2011 WL 1428089, at *2–3 (Bankr. M.D.N.C. Apr. 13, 2011) (internal quotation marks omitted).  In determining whether allegations "upon information and belief" are sufficient to defeat a motion to dismiss, "it is important to differentiate between a case in which pleading 'upon information and belief' is used as an inadequate substitute for providing detail as to why the element is present in an action . . . and the proper use of 'upon information and belief,' where a plaintiff does not have personal knowledge of the facts being asserted. . . . [P]leading on the basis of information and belief is generally appropriate where information is particularly within defendants' knowledge and control."  Mann Bracken, LLP v. Exec. Risk Indem., Inc., No. DKC 15-1406, 2015 WL 5721632, at *7 (D. Md. Sept. 28, 2015) (internal brackets, citations, and quotation marks omitted).  The pleadings appear to fall into the latter category, where Camco lacks personal knowledge of the facts asserted.

one of Camco's adapters is the '#1 Best Seller' in RV receptacles" and "[t]hat product is sold in such sizeable quantities that Amazon.com identifies 1,850 customer reviews of the product, with an average 4.5 star rating." (Id.)

For identity of service or origin in the minds of the purchasing public, the amended complaint provides a photo of a retailer's display and alleges that it "illustrates the importance of the color combination trade dress of the products as a source indicator when purchasing decisions are made." (Id. ¶ 30.) Camco further contends, "[u]pon information and belief, [that] the consuming public has come to expect that products are from Camco and are of a certain quality of products when they bear Camco's Trade Dress." (Id.) Thus, Camco alleges, it "has consistently and intentionally used" its trade dress "in order to facilitate a connection in the minds of consumers between products with Camco's Trade Dress and the quality for which Camco has become known." (Id. ¶ 12.)

These allegations are sufficient to make a contention of secondary meaning plausible, and "[g]iven the factually intensive nature of secondary meaning, it is not appropriate for the court to weigh the factors at this stage." Rothy's, 360 F. Supp. 3d at 388; see also Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc., No. 3:08-CV-573, 2009 WL 2013599, at *9 (E.D. Va. July 10, 2009) ("The Fourth Circuit, of course, has cautioned that

the existence of secondary meaning is generally a question for the trier of fact." (citing U.S. Search, LLC v. U.S. Search.com Inc., 300 F.3d 517, 525 (4th Cir. 2002)).  Accordingly, the court finds that secondary meaning has plausibly been alleged at this stage.

### 3.  Non-Functional

Defendants argue that Camco's amended complaint fails to allege non-functionality.  "The so-called 'functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature.'"  McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014).  "A product feature is functional if it is essential to the use or purpose of the article or it affects the cost or quality of the article.  In other words, a feature is functional if exclusive use of the feature would put competitors at a significant nonreputation-related disadvantage."  Tools USA, 87 F.3d at 657 (internal quotation marks, citations, and brackets omitted).  A plaintiff asserting protection for an unregistered trade dress has the burden of proving that the trade dress is non-functional.  15 U.S.C. § 1125(a)(3); see TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 30 (2001) (noting the "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection"); Rothy's, 360 F. Supp. 3d at 383 ("When a trade dress is an unregistered

trademark, the plaintiff has the burden of proving that the matter sought to be protected is not functional." (internal quotation marks omitted)).

In its amended complaint, Camco alleges that its trade dress is non-functional because "[i]t does not assist the functioning of the extension cords or dogbone electrical adapters, and it is not otherwise functional. Camco's exclusive use of its Trade Dress does not place other competitors at a disadvantage; there are a variety of other non-infringing designs available on the market." (Doc. 16 ¶ 21.)

Defendant JSC argues that, while functionality is a question of fact, Camco has still failed to adequately plead non-functionality. (Doc. 34 at 2-7). In support of this argument, JSC cites several cases from district courts in other circuits where the court granted a motion to dismiss because the plaintiff failed to plead facts sufficient to plausibly allege non-functionality. (Id.)

However, it is difficult to imagine what more Camco should allege at this stage. The amended complaint alleges that the design does not assist the functioning of the extension cords or dogbone electrical adapters and that the trade dress does not place competitors at a disadvantage because there are a variety of other non-infringing designs on the market. (Doc. 16 ¶¶ 21, 49.) In the context of the facts of this case, these are sufficient to

allege non-functionality at this stage.  See Rothy's, 360 F. Supp. 3d at 384 (finding that allegation that the shape and/or ornamental design of the plaintiff's product is non-functional sufficient to survive motion to dismiss because functionality involves an inherently factual review); Stat Ltd., 60 F. Supp. 3d at 637–38 (noting that although plaintiff's allegations were "discernibly skeletal in factual content," they satisfy Rule 12(c) because a trade dress infringement claim involves "an inherently factual review rarely resolved at the motion to dismiss stage"); Garnier-Theibaut, 2018 WL 2268154, at *5 (finding that, where the complaint alleged the design was non-functional, there was no evidence of functionality before the court, and the description of the design was "more evocative of artwork than function," the plaintiff sufficiently alleged non-functionality so as to survive motion to dismiss stage).

In sum, because Camco has sufficiently alleged secondary meaning and non-functionality, and because Defendants do not contest whether likelihood of confusion is alleged, the amended complaint sufficiently alleges a claim for trademark infringement. Thus, Defendants' motions to dismiss this claim will be denied.

### C.    Common Law Trade Dress Infringement

The second claim for relief alleges trade dress infringement under common law.  (Doc. 16 at 17.)  The standard applicable to this claim is similar to that for a Lanham Act claim.  CTB, Inc.

v. Hog Slat, Inc., No. 7:14-CV-157, 2018 WL 4035945, at *18 n.30 (E.D.N.C Aug. 22, 2018) (citing Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987); Devan I, 1992 WL 511694, at *14). Having denied Defendants' motions to dismiss the Lanham Act trade dress infringement claims, the court will deny Defendants' motions as to the common law trade dress infringement claims for the same reasons. See Devan Designs, Inc. v. Palliser Furniture Corp., No. 2:91CV00512, 1993 WL 283256, at *2 (M.D.N.C. Apr. 21, 1993) (denying defendant's motion for summary judgment on plaintiffs' North Carolina common law trade dress infringement claim because defendant's Lanham Act claim was permitted to proceed, noting similar standards); Stat Ltd., 60 F. Supp. 3d at 637–40 (denying motion for judgment on the pleadings as to claims for trade dress infringement under Virginia law where federal trade dress infringement claim permitted to proceed).

### D. Passing Off

Camco's third claim for relief alleges passing off. (Doc. 16 at 18.) Nowhere in the amended complaint or briefing does Camco clarify whether this is a federal claim under the Lanham Act or a state claim under the North Carolina UDTPA. Compare Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 27–28 (2003) (considering a claim for reverse passing off in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)), with Rutledge v. High Point Reg'l Health Sys., 558 F. Supp. 2d 611, 620–21 (M.D.N.C.

2008) (considering preemption of a reverse passing off claim brought under the North Carolina UDTPA).[4]  To the extent that Camco intended for this claim to proceed under the North Carolina UDTPA, those arguments are subsumed under the fifth claim for relief, "statutory unfair competition," which Camco says in its briefing is meant to refer to the North Carolina UDTPA.  (Doc. 21 at 17; Doc. 33 at 21.)  To the extent the amended complaint alleges passing off under federal law, the allegations are insufficient at this stage of the proceedings.

Passing off "occurs when a producer misrepresents his own goods or services as someone else's," and reverse passing off occurs when the "producer misrepresents someone else's goods or services as his own."  Dastar, 539 U.S. at n.1.  A federal claim for passing off under the Lanham Act "requires a showing that the defendant falsely represented that the plaintiff was the 'source' of the goods when it was not, that is, that it falsely suggested that the plaintiff was 'the producer of the tangible product sold in the marketplace.'"  Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1248 (11th Cir. 2007) (quoting

---

[4] In its response to Trek Power's motion, Camco cites only to cases addressing passing off under state law.  (Doc. 21 at 15-16.)  In its response to JSC's motion, Camco cites to cases involving both federal and state law.  (Doc. 33 at 19-20.)  Trek Power expressly considers the claim under the Lanham Act.  (Doc. 32 at 10.)  JSC does not specify whether it is addressing a state or federal claim but cites to cases involving both federal and state law.  (Doc. 28 at 12-13; Doc. 34 at 10-11.)

Dastar, 539 U.S. at 31). Thus, a plaintiff must allege that the defendant misrepresented its product as that of someone else or falsely suggested that the plaintiff was the producer of the defendant's product. Id.; Dastar, 539 U.S. at 28 n.1.

Here, apart from the allegation of copying trade dress, Camco's amended complaint lacks any factual allegation that either Defendant misrepresented its products as Camco's or made any false suggestion that Camco produced them. (See Doc. 16 at 60-63.) Even the three paragraphs of the amended complaint Camco cites in its briefing fall short. (Doc. 33 at 20-21 (citing paragraphs 22, 28, and 31).) These allegations show only the potential of confusion based solely on the trade dress. This is borne out by the language of the third claim for relief, which alleges that "Defendants have passed off their Knock-off Products as Camco's by Defendants' use of Camco's Trade Dress." (Doc. 16 ¶ 60 (emphasis added).) Otherwise, Camco's allegations that Defendants attempted to deceive the public into purchasing their products instead of Camco's are purely conclusory, (see id. ¶¶ 60-63), and thus insufficient to survive a motion to dismiss. Iqbal, 556 U.S. at 681. Camco seemingly admits as much by its plea for discovery to permit it to learn of Defendants' marketing and potential misrepresentations. (Doc. 21 at 16.) Even at this stage, however, it is not unreasonable to require Camco to provide some factual basis for alleged misrepresentations in marketing and packaging,

if they are being made.  For that reason, Defendants' motion to dismiss this claim will be granted.[5]  Should discovery reveal a factual basis for a passing off claim, Camco is always free to seek timely amendment of the pleadings.

### E.    Statutory Unfair Competition

The fifth claim for relief alleges statutory unfair competition under North Carolina law.  (Doc. 16 at 19.)  To establish a violation of North Carolina's UDTPA, N.C. Gen. Stat. § 75-1.1, "a plaintiff must show that the defendant committed an unfair or deceptive act, that affected commerce, and proximately injured the plaintiff.  Djarum v. Dhanraj Imps., Inc., 876 F. Supp. 2d 664, 668 (W.D.N.C. 2012).  "An act or practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers[,] and an act or practice is deceptive if it has the capacity or tendency to deceive."  Ferrellgas, L.P. v. Best Choice Prods., No. 1:16CV259, 2017 WL 3142044, at *6 (M.D.N.C.

---

[5] Camco's argument that Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145 (4th Cir. 1987), supports its claim is unpersuasive.  (Doc. 33 at 19.)  There, the court determined that a likelihood of confusion under the Lanham Act and North Carolina UDTPA could exist because defendants' shirts bore a symbol substantially identical to the plaintiff's representation of a polo player mounted on a horse, but defendants' label (with their own name) was affixed on the inside of the collar where it could not readily be seen by consumers. Id. at 147-48.  The court found these facts demonstrated sufficient likelihood of confusion to support a claim for trademark infringement under the Lanham Act and the North Carolina UDTPA.  Id. at 148-49.  Here, there are no allegations that either Defendant markets or packages its product in a manner that misrepresents whose product it is.  In fact, the only portion of the amended complaint to this effect indicates that Defendant Trek Power markets its products in its own name on its website.  (Doc. 16 ¶ 23.)

July 24, 2017) (internal brackets and quotation marks omitted) (quoting Bob Timberlake Collection, Inc. v. Edwards, 626 S.E.2d 315, 322-23 (N.C. Ct. App. 2006)).

North Carolina's UDTPA "prohibits the same type of activity that the Lanham Act prohibits because trademark infringement and false designation undercut the mark holder's goodwill and the consumers' ability to distinguish among products." Id. at *7 (quoting Djarum, 876 F. Supp. 2d at 668). Therefore, because Camco has sufficiently alleged a Lanham Act trade dress infringement claim, it has also sufficiently alleged a North Carolina UDTPA claim. See Universal Furniture Int'l, Inc. v. Collezione Europe USA, Inc., No. 1:04CV00977, 2007 WL 2712926, at *15 (citing Polo Fashions, 816 F.2d at 148), aff'd 618 F.3d 417 (4th Cir. 2010). Defendants' motions to dismiss this claim will also be denied.

### F. Common Law Unfair Competition

The fourth claim for relief alleges unfair competition under common law. (Doc. 16 at 18.) The tort of unfair competition consists of acts or practices by a competitor which are likely to deceive the consuming public. Stearns v. Genrad, Inc., 564 F. Supp. 1309, 1320 (M.D.N.C. 1983) (citing Charcoal Steak House of Charlotte, Inc. v. Staley, 139 S.E.2d 185 (N.C. 1964)), aff'd 752 F.2d 942 (4th Cir. 1984); Gateway Mgmt. Servs., Ltd. v. Carrbridge Berkshire Grp., Inc., No. 17CVS5275, 2018 WL 2164992, at *7 (N.C. Super. Ct. May 9, 2018). "The tort has traditionally been applied

to practices such as trademark or trade name infringement, [and] imitation of a competitor's product or its appearance . . . ." Stearns, 564 F. Supp. at 1320. "The North Carolina common law of unfair competition in the context of trademarks and tradenames is similar to the federal law of trademark infringement" and a defendant's actions are "actionable when they damage a plaintiff's legitimate business." Polo Fashions, 816 F.2d at 148. "The standard for violation of the UDTPA and common law unfair competition are not appreciably different. The key distinction between the two claims is that common law unfair competition claims are limited to claims between business competitors, whereas a UDTP claim may be maintained by a consumer or a business competitor." Gateway, 2018 WL 2164992, at *6 (internal citations and quotation marks omitted).

Trek Power argues that Camco's amended complaint does not provide a sufficient factual basis for actual damage and that its allegations are conclusory. (Doc. 20 at 11.) Damages for purposes of a common law unfair competition claim "are suffered when a rival adopts for his own goods a sign or symbol in an apparent imitation of another's that would likely mislead prospective purchasers and the public as to the identity of the goods." Polo Fashions, 816 F.2d at 148. Trek Power's argument is not persuasive. Camco has alleged sufficient facts that Defendants have directly and intentionally copied Camco's trade dress and that consumer

confusion is likely to result. Because Camco has alleged facts sufficient to make out claims under the Lanham Act and North Carolina UDTPA, it has also alleged sufficient facts to plead a common law unfair competition claim. Defendants' motions to dismiss this claim will therefore be denied.

## III. CONCLUSION

For the reasons set forth above, therefore,

IT IS ORDERED that the motions to dismiss of Trek Power (Doc. 19) and JSC (Doc. 27) are GRANTED as to the third claim for relief (passing off), which is DISMISSED WITHOUT PREJUDICE, and are otherwise DENIED.

                                             /s/   Thomas D. Schroeder
                                        United States District Judge

May 20, 2019